Good morning. I am counsel for Mr. Marquez-Perez. My name is Lidia Lizarribar. The first issue before this court is whether the court should have granted counsel's motion for more time for a trial. The issue became known to the court just a few days before a trial was set to start. However, when we go to the motion filed, this motion has merits. The merits of this motion are based on the fact that in this case, part of the evidence was videos, CDs, 34 CDs, which we know that counsel never saw before trial. So this includes surveillance videos and videos that were taken when the search was conducted? Yes, Judge. And counsel had tried to see them at MDC. However, there was an issue of the software to see them. Those CDs worked. What happened was that the software did not allow them to be seen with his client. Now, we know from the record that counsel contacted and tried to get software to be given to MDC. Excuse me, counsel. The government says that defense counsel had many of these tapes for about two months. During those two months, he could have... It's understandable why he would want to review them with his client, but he had ample time to review them himself without going to the prison facility. Isn't that a relevant consideration? He chose to wait until almost the last minute to even begin to try to review these tapes. Well, in part, yes, Judge. He had them. He had part of those CDs a month before trial in December. He had part of them in February. He had the other four. And he did wait to see them about a month. However, once he knew that the software didn't work, he was constantly mailing the government and trying to get the software to see them. He did this almost on a daily basis. It is the software. It is not the CDs. The government told him, come by, get new CDs. It was not the CDs. It was the software to be able to see them. We know that counsel did not see them at all. He does state to the court, I didn't see them. I just decided not to see them. He refused to see them, actually, at trial, which is a question that I have. How is this? I'm sure you're going to argue this is some kind of strategy. I'd like to know what kind of strategy that involves. He had none, Your Honor. He said so. So it's just that he didn't want to see them? Well, Judge, we don't know if it was just that he didn't want to see them. We know that he didn't see them and he made that decision not to see them. He told that to the court. All right. That's really not the question that I have. It just came up because I've been curious ever since I read that, what was involved. And you haven't answered, you haven't helped my curiosity. I'm sorry, Judge. But that may not be your fault. My question is, the whole argument goes to the issue of that your client says he might have pled guilty. Correct. Okay. But in fact, the record, as I read it, shows that he received the lowest sentence that the government was willing to offer him. So how is he prejudiced by all this? Well, Judge, he could have pled without a plea, a straight plea, and get points for doing so, acceptance points. There is in the motion, Judge, a comment, motion to docket 39. There is a comment by counsel that says that once he sees the evidence, he could then talk to his client about a plea and possible cooperation. Now, that means his client might have known things interested of the government. You get points for that, too. He could have set a deal with that, Your Honor. He could have had a better deal, I feel, if he had pled a straight plea or if he had set to negotiate a plea. Because here, you get a plea offer. The government says, this is it. It doesn't go down. But, Judge, usually, counsels sit with a government counsel and they negotiate pleas. This is what I have. What is it you have? And then they reach an agreement. It's not usually this is the only plea you will get, either you take it or not. I don't know if I have answered, Judge. That's a good speculative argument, yes. Well, Judge, but seeing the motion filed by counsel before a trial and seeing the fact that there is a spec of possible dealing with a plea negotiation, it could have happened. It could have happened in this case. Now, the fact that Mr. Burgos didn't see those tapes, when you go to the record, Judge, the court asking, do you have anything to say, objections, when the government came in with them. And this was the very first day of trial, the very first witness, Judge. And counsel just said, docket 39. That was it. I am not ready. I haven't seen them. We have to also see, Judge, that the very first day, he asked the court for a few hours to be able to see the videos. And the court said, no. I won't give you time. Now, the next day, there was no trial. In the morning, he was then able to see them. But a few hours on that first day, Your Honor, would have given an appellant a view of what he was going to see in those CDs. I mean, there were 34 CDs showing surveillance. Those were the backbone of this case, of what the agents saw. The witness sat, and throughout those CDs, the very first day, the evidence came in, and he was saying, this is a drug deal. This is drugs, weapons, ammunition, vehicles. This is him, the appellant. How long was the trial?  Five days, Your Honor. It was a very short trial. But counsel saw the tapes the second day? The second day. And the client as well? Yes, Your Honor. Was there no opportunity to change the plea at that point and cooperate? Usually, yes. Counsel did nothing about it, Judge. He just pushed on in the case. Nothing was done by counsel as to that aspect. Is there anything in the record that suggests that the appellant told counsel at that point that he would rather plead guilty now that he's seen the tapes? No, Judge. The only thing we have is in the PSR, he does state that if he had seen them, he would have pled. And that is it in the PSR. But here, the court did ask him once. He said, the marshal stole me. I'm trying to remember. Was that what you're about to say? Did it happen before or after he saw the tapes? He viewed the tapes. It happened after he saw the tapes. It happened after. Wasn't the marshal told? I'm sorry? You started to say the marshal said something. Okay. The court stated that the marshal told him, appellant had said, he would have pled guilty if he had seen them, if he had seen those CDs. The court asked him, and counsel then intervened, opposed, and appellant said no to the court. And the court asked him again. He did it twice, and appellant said no. Ask him what? I didn't hear the question. The question was whether he had told the U.S. marshal he would have pled guilty if he had seen those tapes before trial. And he said no? The answer was no. And then the court asked him again because counsel opposed the court asking him, and then it was asked a second time, and again he said no. That is there in the record. Counsel, on your ineffective assistance of counsel claim, why should we depart from our usual rule that that's a matter that should be addressed through post-conviction proceedings? What would allow us on this record to fairly evaluate that claim? Yes, George. I believe that when counsel doesn't take the time to see the evidence before trial, and he says so to the court, I did not see it. I just decided not to see it. That is being ineffective to his client completely. The norm is, judges, that when you have a case, you see the evidence prepared for trial. In this case, counsel did nothing of that. Well, doesn't your, and you can certainly argue in the alternative, but doesn't your focus on all of his deficiencies prior to trial, which I think the trial judge took note of, doesn't that undermine your argument that there was something arbitrary about the judge's decision to refuse to grant a continuance? I mean, it's pretty hard to reconcile those two arguments. Well, George, I think here we have a mix of things. It's not only one thing. Counsel didn't see evidence in this case. The court did not give him time. The court didn't ask really why. I don't think the court read the motion in itself. The judge just said denied, and he went on, and he just pushed on without reading the merits of that motion. And counsel should have at least seen those tapes before trial and told his client what was there, so his client could then determine if he wanted in any way to plead guilty and seek something more favorable to him. And he did not do it. And he says so. In the motion he says about appeals, he says, I won't talk to my client until I see the tapes. I cannot tell him what he should do at this point in time. And that is three days before trial. What's counsel's name? Burgos, Jerry Burgos. And does the record show his experience, background? Is he a new counsel, or is he someone who practices? He has been a long time with us, Your Honor, in the court, in the federal court. That's in the record. No, well, no, Judge. It's not here in this case record. I just know him from being there in the court. And he has seen cases, a lot of cases, trial cases. But you can also see, Judges, that there was a clash between counsel and the court. Just before you turn to that, the record, I understood from your brief that the record does not show whether counsel attempted to look at the tapes himself ahead of time. Well, what there is, is that he says to the court, he says, I did not see them because I decided not to see them. Obviously, that is true, and he wasn't lying to the court. He didn't see them. But you said in your brief that the record does not show whether he attempted to see them himself. That's true. It's correct. So for purposes of substantiating the motion to continue, one would think that counsel would have told the court what efforts he made to look at those tapes for purposes of that motion. But for purposes of ineffective assistance, your point is simply, regardless of whether he tried to or not, he never saw them. That's right. Okay. That's right. He says that in the record. And that's how you would reconcile those two positions? Correct, Your Honor. Okay. Yes. I see. Okay. Well, we have your brief on the third issue. Thank you, Judge. May it please the Court, Thomas Klumper on behalf of the United States. Now, in this case, I would just like to actually clarify the issue of the third day of trial, which was actually technically, I would say, one because they did half days. On the start, or actually it would be really second day of trial, what happened was the court had heard rumors from the marshal that the defendant had wanted to maybe plead guilty. So he approached and had the defendant express whether he wanted to plead guilty or not. And in this case, the questions he specifically asked was, would you have requested a change of plea to one of guilty? Is that true? At first he says, I don't understand. And then there was an issue because he says people keep talking at the same time. And so what happened was the court specifically asked, says, so you're not interested in changing your plea? And the defendant said, no. So he was aware, after seeing the videos, that he could have pled guilty. He had already seen the videos? Yes, by that point. Yes. And sister counsel had indicated by that point. And because the court had allowed him in the morning, actually of, I'll say, the second day of trial, to view the videos and everything else, our IT person had come in. Now, as for the issue of also pleading guilty, the PSR, yes, he did indicate something to the effect, I would have pled guilty. However, here, under the acceptance responsibility aspect, he did state that. However, he stated one of the elements of the offense is that he was charged with a firearms offense, 924C. It has to be in furtherance of the drug. In this case, it was a drug offense. He stated, I wasn't doing it in furtherance of the drug offense. I was just selling these firearms on my own. So he was denying an element of the offense. He would have gone to trial on that aspect anyway, under 924C. And also, he even stated, his second comment was, that he believed the police officers had planted some of the drugs. So therefore, then, again, we would have had to go to trial anyway, because he was not accepting any responsibility for this offense. So based on that, as for the plea aspect, that, I think, is awash because of his statements and the opportunity that he was given to try to plead guilty on the second day, well, or third day of trial. Now, with respect to the continuance, you also have to look at the timing of it. This defense counsel had filed at 540 on a Friday, when the court is no longer there, and Monday was a holiday. And Tuesday was actually the first day of trial. So what do you expect? It was untimely. And therefore, I mean, the court, and then with the questioning of the counsel, where he admitted that he hadn't taken the opportunity, he did not take the opportunity to review the videos. I mean, the court said, then, that explains it all. Therefore, let's continue. Now, in this case, the counsel did say, a little bit inconsistently, he stated, I have reviewed some of the evidence. So we're not sure what he had reviewed or not. So that's why I'm claiming the ineffective assistance counsel claim cannot, you know, is not ripe in this case, because it's not clear what he had done beforehand. Now, I'd like to throw out to you. Can you speculate, I guess is the only way I can put it, what tactical advantage he would receive from doing such a thing? Well, I think when I look at it, he knew what the evidence was about in this case. Because the reason why I can say that is because when you look at it, he was provided, actually, even something better than the videos. He had the, actually, search warrants from the government already since, actually, December 12th, where it actually stated in detail what these witnesses were going to testify as to what had happened in the surveillance and everything else. Actually, it was even better, because it was their own sworn words of what would have happened, what they believed had happened, you know, in this case. And they had the inventory of where it was seized and the location where these items were seized. So he knew. And he actually even filed a motion to suppress. When did he file it? Actually, on the Monday on the holiday before. So he was aware of what the evidence was. So, I mean, like I say, he had something even better. He had, actually, the search warrants with the affidavits explaining the whole theory of the government's case. Well, in terms of ineffective assistance of counsel, what other facts are needed to be explored in this case? We have to see what he actually looked at. Did he even look at the search warrants and the other, you know, in order to determine what he, you know, if. I mean, if you look. Well, isn't the ineffective assistance, apart from whether he looked at it or not, whether he discussed the matter with his clients? Well, in this case, Van Molten says it's up to the counsel to look at the evidence and everything else in order to determine how to approach in this case. Well, in this case, if you look, he wasn't ineffective during trial. He was raising many objections, multiple objections. If you look, he was effectively cross-examining because we had only completed one witness, the direct of one witness, on that afternoon of the first day. So he was able to look at all the other evidence and then use it effectively in the remaining part of the trial in this case. As for the change of plea, issue of plea potential, look at the defendant was denying. He was denying that he had the firearm for the drug purposes. He was denying that he had the drugs, that they were planted. So what do you expect? In this case, how can you show prejudice even? And that's what the government's argument is. Counsel, can I ask you just a question about the due process argument that Apollo makes relating to the alleged bias of the trial judge? Yes. You've been doing this work for a long time. I mean, have you, in your experience, have you ever seen anything like what happened here? I'm referring to the second incident. I'm sorry? I can't say incident. The challenge where he was telling him to shut up and sit down. Yeah. Telling him to shut up. Telling marshals to forcibly put the attorney into his seat. I guess my question is, it certainly appears that there was a lot of provocation by counsel that would understandably upset the trial judge. But shouldn't a trial judge sensing that things are beginning to get out of control take a break and send the jury out so that all of this can play out outside the presence of the jury? I mean, everything you're describing here took place in the presence of the jury. I mean, how can that not leave, to put it mildly, a terrible impression on the jury about how the judge feels about this attorney? And how could that not affect the jury's view of the defendant who's being represented by this attorney? Well, you have to look at it in this aspect. Yes, counsel, the way he was doing it was wrong, and so was the court, I believe. I have never really seen, well, I've seen a couple of incidents before, but not like this. But my understanding is counsel kept objecting, wouldn't let the AUSA explain the reason for the objection. And yes, he did start saying shut up and sit down. He said it several times and had the marshal. But counsel kept standing up and kept objecting, if you look, 15, 16 times. Yes, they did eventually then, when this incident was going on, they released the jury, and then they completed what was going on in this case. How long did this play out in the presence of the jury? I mean, it goes on for some time. It goes on for several pages, Your Honor. So a couple of minutes, my understanding is, looking just from the timing aspect. Now, yes, he could have handled it differently. However, if you look at it, the court gave several, I think, instructions. One at the beginning, not to take into account, you know, the preliminary instructions of what the court does. And also, he gave an instruction, if I may, what the court stated afterwards. It says, ladies and gentlemen of the jury, before we continue, I just want to mention something. Sometimes attorneys do things out of zeal. They have for the representation of their client, and the court has to take action. You are not to consider whatever I indicated to the attorney as against him or against his client. Is that clear? So he gave a strong instruction. Even at the end, at the final jury charge, he did that. And so in this case, I think it was enough to overcome this due process violation, because he did inform the jury not to take it in. Then he also gave instructions. You have to look at the evidence, not what I did. You have to look at it in order to convict this person. So, I mean, I think in this case, the court, I can't say fixed the problem, but it doesn't affect the defendant's due process rights in this case. Well, how are we supposed to analyze how this might have affected the jury? In a situation like this, we apparently have to find serious prejudice. That is correct. And here, there was so overwhelming evidence. Between the search warrants, everything else we're talking about, the government-provided certified translations number, if you look at 79, of what had happened in the case. We had the testimony. We had the videos. We had overwhelming evidence of this defendant's guilt. Do you think the way in which counsel was performing, I mean, it appears that the judge thought that his performance was deficient in so many respects. Can we perhaps factor that into the ineffective assistance of counsel analysis? Arguably, this could just be seen as a continuation of the ineffectiveness that he showed before the proceedings even began. Not looking at the videos in a timely way, sort of in a fitted peak, saying I'm not even going to look at them, and then look how the trial unfolded. I mean, he has to bear a lot of responsibility for what was going on at trial between himself and the judge. Maybe it's just more of a demonstration of his ineffectiveness. No, Your Honor. If you look at it, he was very effective because he was objecting, and actually the court was agreeing with a number of his objections and everything else. And you can't show bias because, actually by the court in this case, because when the government objected on a number of objections, it overruled them. So I think in this case he got a fair trial because he was effective in his cross-examination, in the way he handled the matters, in dealing with the witnesses. And so I would say no. I would think, and plus, like I say, where can you show the prejudice? What happened? In this case, he wasn't going to plead guilty, it looks like. As for a motion to suppress, he had the opportunity and there was no showing, you know, that the evidence would have been suppressed because there was lack of standing because he was only contesting one of the three search warrants. And still today, there is no evidence regarding whether the defendant had standing or not. And they're not contesting this on appeal. So in this case, I think... Did you find anything in the trial transcript that would suggest that the judge became frustrated or short-tempered with the prosecution at any point? I... No, Your Honor, not that I saw anything, no. From reading the record from the cold record? No, I did not see any on that one. I just know when the government was objecting and doing things, it would overrule and everything else, or a number of them, that the government was objecting to and the court held in its favor. And here, even allowed, if you were thinking he was biased against him, he did allow him, the court allowed him in the first morning after the second day of trial to come in with our IT person to look at the videos. He said, sure, have him come in. He allowed the court to be open for the defendant and defense counsel to review the videos before the cross-examination of the first witness. So, any other questions? Permission to withdraw. Thank you.